[Civil No. 1780.    Filed April 7, 1920.]

[188 Pac. 873.]

## TONY BERTOZZI, Appellant, v. LUIGI COLLASO and JOE VALDRINI, Appellees.

1. PARTNERSHIP—PARTNER CANNOT SUE ANOTHER AND HIS FRAUDULENT TRANSFEREE FOR CONVERSION BEFORE ACCOUNTING.—Where there has been no final accounting between the partners, one partner cannot maintain suit against his copartner and another for conversion of the firm property, though it was transferred to the other by fraudulent collusion between the two.

2. PARTNERSHIP — LEGAL ACTION NOT MAINTAINABLE BETWEEN PARTNERS BEFORE ACCOUNTING.—One partner cannot sue the other at law until after a full accounting and balance struck, which accounting is an action on contract, and not ex delicto.

APPEAL. from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

Mr. A. L. Hammond, for Appellant.

Messrs. O'Sullivan & Morgan, for Appellees.

BAKER, J.—The plaintiff, Bertozzi, sued the defendants, Collaso and Valdrini, to recover damages for the alleged conversion of certain personal property. The court dismissed the action and the plaintiff appeals. The evidence, fairly considered, tends to show that Bertozzi and Collaso were partners, and that in the month of August, 1918, and for a considerable time prior thereto, they were engaged in the

business of conducting a hotel at Prescott, Arizona, under a lease of the property from the defendant Valdrini. The lease was for a term of five years, commencing April 13, 1918, at the monthly rental of $300, payable on the fifteenth day of each and every month in advance. The lease contains the following clause:

"It is further mutually agreed and stipulated, . . . in case the parties of the second part throw up and abandon this lease at any time during the life thereof, then in such event the first party may immediately seize and take hold of and reduce to his possession all of said personal property which may, at any time be owned or claimed by the parties of the second part under their rent lease thereon, and shall retain the same and the whole thereof as liquidated damages for a failure to carry out the terms of the lease by the parties of the second part, in which event the parties of the second part, shall have no further right, title, or interest in and to the personal property in said building, outside of their. wearing apparel and personal effects."

The rent of the hotel for the month of August, 1918, fell in arrears and remained unpaid, and Collaso abandoned the lease and turned the hotel over to the defendant Valdrini. At the same time he turned over the personal property situated in the hotel and belonging to the firm as liquidated damages for the failure of the lessors to continue under the lease for five years. Bertozzi was absent at the time of this transaction. He claims that Collaso was in possession of partnership funds sufficient to pay the rent, and that there was fraudulent collusion between Valdrini and Collaso for the purpose of defrauding him out of his undivided one-half interest in the firm property.

Conceding that the testimony, fairly considered, tends to show fraud in the transaction between Collaso and Valdrini whereby the plaintiff was deprived of his interest in the property belonging to the firm,

still we are satisfied that he cannot maintain the present action. It is not alleged in the complaint nor was it proven that the affairs of the partnership between Bertozzi and Collaso had been closed up, nor that there had been any settlement of the partnership debts. It is well settled that one partner cannot sue the other at law as distinguished from an action in equity with respect to the partnership transaction, except after a full accounting and balance struck, and such an action is on contract, and not *ex delicto*. One partner cannot sue his copartner for damages in conversion in respect to the firm property. The case of *Sindelare* v. *Walker,* 137 Ill. 43, 31 Am. St. Rep. 353, 27 N. E. 59, is illustrative of the proposition stated. That was a suit brought by one partner against his copartner and a third person based upon the ground of collusion and fraud, whereby the entire assets of the copartnership were diverted. The allegations of the complaint were, in substance, that plaintiff and Hubka were partners in the drygoods business, owning a stock of goods and certain store fixtures, on which they had previously executed a chattel mortgage to defendants; that long before the maturity of this chattel mortgage, and without any authority of law whatever, defendant, by collusion with Hubka, wrongfully foreclosed the mortgage and took possession of not only the goods and chattels described therein, but also others of the value of $5,000, belonging to said firm, which he afterwards pretended to sell to Hubka; that by reason of such wrongful transfer plaintiff was deprived of his said goods and profits and the goodwill of said business; that said wrongs were committed in consideration of the confederation and collusion of said Hubka and defendant to injure and defraud plaintiff. There was no averment that the copartnership between plaintiff and

Hubka had been dissolved, or any settlement had of their partnership affairs. The court says:

"The declaration, therefore, not only fails to show any individual title or ownership in plaintiff to said property, partnership business, or the profits or goodwill thereof, which he says he lost, but affirmatively discloses a state of facts from which it appears that he had only a community of interest therein with his partner, who consented to said transfer and all that was done by defendant in error. A partner's right to partnership property is an ownership of all the assets of the firm, subject to the ownership of every other copartner, all of the partners holding all of the firm assets subject to the payment of the partnership debts and liabilities. Parsons on Partnership, 350. It is clear, therefore, that the individual interest of one partner in the firm property and business can only be ascertained by a settlement of the partnership. *Bopp* v. *Fox,* 63 Ill. 540; *Chandler* v. *Lincoln,* 52 Ill. 77; *Menagh* v. *Whitwell,* 52 N. Y. 146, 11 Am. Rep. 683. This rule applies to the interest of a partner in the profits or goodwill of the partnership business as well as to the tangible assets of the firm. Until plaintiff's actual interest in the partnership has been determined, there can be no ascertainment of his damages. *Buckmaster* v. *Gowen,* 81 Ill. 153; *Sweet* v. *Morrison,* 103 N. Y. 235, 8 N. E. 396. We are clearly of the opinion that, on the facts stated in his declaration, plaintiff has no standing in a court of law."

See, also, 2 Rowley on Modern Law of Partnership, 1054; *Riddle* v. *Ramsey,* 31 Mont. 387, 78 Pac. 597; *Dukes* v. *Kellogg,* 127 Cal. 563, 60 Pac. 44; *Dalury* v. *Rezinas,* 183 App. Div. 456, 170 N. Y. Supp. 1045.

In *Wells* v. *Mitchell,* 23 N. C. 484, 35 Am. Dec. 757, the question was directly presented whether the defendant partner may maintain an action in his own name, and it was held that he could not. The court, in deciding the case, uses the following language, in which the distinction between tenant in common and partners is very clearly made:

"If a tenant in common destroy the chattel, or, as some think, if he sell the whole, his fellow may have trover or trespass against him. But it is clear that between partners those actions do not lie, nor, indeed, any others at law. Everything rests in confidence between partners, and lies in account while the partnership continues; and, if one of them sell or take or destroy the joint effects, all that can be done is to charge him with the value in account. The interest of partners in particular chattels cannot be determined by the number of partners or their shares of the profits; nor can one of them claim a division of specific articles. . . . If this action had, therefore, been brought against the fraudulent partner himself, it must have failed; and it might be on the clearest ground of right and justice. So, for the same reason, it must against the vendee of that partner. As respects the right to the thing sold, the assignee stands in the shoes of his assignor. Besides, it is impossible to say what damages the plaintiff ought to recover. In an action by one tenant in common, he has only to show his interest, which is determinate, as a quarter or a half, and, no plea in abatement being put in, the jury apportions the damages accordingly. But, as already mentioned, the interests of partners are complicated and depend upon the result of all the accounts of the partnership. To take the accounts a court of law is unfit, and, indeed, incompetent; and therefore the jury cannot apportion the damages which, as a partner, the plaintiff ought to recover. As a court of law thus finds itself incapable of ascertaining the rights of the parties and doing justice between them, it ought not to assume the jurisdiction for any purpose, but leave the whole subject to that tribunal, which can administer exact justice in the premises."

In *Homer* v. *Wood*, 11 Cush. (Mass.) 62, the court said:

"It may seem hard and inequitable that the innocent party, who is himself the victim of his copartner's fraud, should be thus shut out from his legal remedy. But the legal connection of copartners is

so peculiar and intimate that their rights and remedies in a court of law are necessarily limited by the relation which they hold to each other. They cannot sue each other. They cannot maintain an action against one of their copartners who is indebted to them in his individual capacity, nor against another firm of which one of their copartners is also a member. These and similar restrictions are the unavoidable results of the technical rules of law in their application to the mutual relations of copartners, and serve to show that, in a court of law, the rights of copartners cannot always have corresponding and adequate remedies. These must be often sought in a court of equity only.''

We think that the reasoning in the foregoing cases is peculiarly applicable to the present case, and decisive of the question that the plaintiff cannot maintain this action. As the plaintiff could not recover judgment against Collaso in this action, he has no cause of action herein against the defendant Valdrini. The case of *Montjoy* v. *Holden,* Litt. Sel. Cas. (Ky.) 447, 12 Am. Dec. 331, is illustrative of this proposition. That was an action of trespass brought by one partner against his copartner and a third person for forcibly entering a storehouse and taking therefrom a quantity of merchandise belonging to the firm. The court said:

''But it was contended in argument that, however true it may be that one partner cannot maintain trespass against his copartner, any one of the partners may recover of a stranger for a trespass committed on the partnership goods, unless the failure to unite all the firm in the action is taken advantage of by a plea in abatement, and as there is no plea in abatement in this case, and the action is brought against Alvin Montjoy, who was no partner, it was insisted the plaintiff, Holden, is entitled to recover the moiety of the goods. It should, however, be recollected that the partner, Thomas Montjoy, is a codefendant with Alvin Montjoy, and damages are sought to be recovered for a taking by the defendants jointly; and as from the nature of Thomas Montjoy's right and in-

terest in the goods no trespass can have been committed by him in taking them, the co-operation of Alvin in that taking cannot change the character of the act from what it would have been if the taking had been by Thomas only.''

See also, *Reed* v. *Gould,* 105 Mich. 368, 55 Am. St. Rep. 453, 63 N. W. 415; *Dalury* v. *Rezinas, supra.*

The judgment of the lower court dismissing the action is affirmed.

CUNNINGHAM C. J., and ROSS, J., concur.